UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANGEL PETERSON,

      Plaintiff,                                    No. 17-11733

v.                                              District Judge Mark A. Goldsmith
                                                  Magistrate Judge R. Steven Whalen

ANTHONY STEWARD, ET AL.,

      Defendants.

                                /

**REPORT AND RECOMMENDATION**

      On May 31, 2017, Plaintiff Angel Peterson, a prison inmate in the custody of the Michigan Department of Corrections, filed a *pro se* civil complaint alleging claims under 42 U.S.C. § 1983, the Fourteenth Amendment, the Eighth Amendment, and the Fair Labor Standards Act [Doc. #1].[1] Before the Court are the following motions, which have been referred for Reports and Recommendations under 28 U.S.C. § 636(b)(1)(B):

    -Defendant Trinity Services Group, Inc.'s ("Trinity's") Motion to Dismiss [Doc. #15 and #16].[2]

    -Defendants Aramark Correctional Services, LLC ("Aramark"), and Rasheed

---

[1] Plaintiff has twice amended her complaint in order to correct misnomers or misspellings of Defendants names. *See* Doc. #7 and Doc. #40. However, the substantive claims set forth in the original complaint [Doc. #1] remain unchanged.

[2] The motion is found at Doc. #15, and the brief in support is found at Doc. #16.

-1-

Ansari's Motion to Dismiss [Doc. #21].

-Defendants Anthony Stewart, Office of Community Corrections, and Heidi Washington's (State Defendants') Motion to Dismiss [Doc. #23].

For the reasons discussed below, I recommend that all motions be GRANTED and that the complaint be DISMISSED WITH PREJUDICE.

## I. FACTS

Plaintiff's complaint revolves around two general issues. First, that the alleged overcrowding at Huron Valley Women's Facility is the result of retaliation for Michigan female prisoners' success in a prior class action lawsuit, and also constitutes a violation of the Equal Protection Clause of the Fourteenth Amendment (vis-a-vis male prisoners) and the Eighth Amendment proscription against cruel and unusual punishment. Second, that the wages that Defendant Aramark pays to female prisoners violates the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., and Michigan law.

Plaintiff is an inmate at the Huron Valley Women's Facility, a prison operated by the Michigan Department of Corrections ("MDOC"). At the time of the events alleged in the complaint, the MDOC contracted with Aramark, a private company, to provide food services for inmates. Plaintiff alleges that the "MDOC created an employer-employee relationship with Aramark and Michigan prisoners." *Complaint* [Doc. #1], ¶ 9. Plaintiff states that on April 6, 2014, she filed a grievance against Aramark and its Director, Rasheed Ansari, alleging "a breach of contract with the MDOC and the laws of the State of Michigan." Specifically, she complained that she was demoted from her position as

-2-

lead cook and assigned to a position that reduced her hourly wages. *Id*. ¶ 10.

Plaintiff alleges that in 2009, she was a member of a class that settled a class action lawsuit against the MDOC, and that as a result of that settlement, all Michigan female prisoners were housed in a single prison, resulting in "severe overcrowding at Women Huron Valley." *Id*., Statement of Claims, at p. 1, Pg. ID 9. She alleges that the "decision not to alleviate the overcrowding is an act of retaliation against all female prisoners for winning one of the largest cash verdicts by prisoners against the MDOC." *Id*.

The Plaintiff alleges that the Office of Community Corrections ("OCC"), an arm of the MDOC, was statutorily created "to alleviate institutional crowding appropriately through community-based punishment programs." *Id*., Pg. ID 9-10. She claims that although the OCC has helped reduce the number of male prisoners in Michigan prisons, it has failed to do so for female inmates, and that the "failure to reduce state prison commitments of female offenders is deliberate and has led to severe over-crowding." *Id*., Pg. ID 10. She claims that this over-crowding has resulted in an Eighth Amendment violation. *Id.,* Pg. ID 10-11.

Plaintiff alleges that Defendant Aramark and the MDOC were the sole parties to a contract to provide food services to Michigan prisoners. *Id*., Pg. ID 14. She alleges that this contract violates the FLSA and Michigan law because the institution houses inmates in the "boot camp" program who, she says, are not under the MDOC's jurisdiction.

Therefore, she claims, because Aramark's prisoner workers are providing services that are not used solely for a prisoner population, they are entitled to be paid at the minimum wage rate. *Id*. Plaintiff alleges that on April 9, 2014, she was demoted as lead cook, where she was paid .325 cents per hour, to a "pan runner" position that paid .175 cents per hour. *Id*., Pg. ID 15.

Plaintiff alleges that her doctor advised her to get at least 30 minutes of exercise per day, and that therefore she had a regular 6:00 p.m. "weights and aerobics call-out." *Id.,* Pg. ID 18. However, on February 8, 2015, she arrived for dinner after her exercise session, only to be told that she could not eat because she was late, and the chow hall was closed. *Id*. Yet, she says, because her exercise session is considered a "non-essential call-out," she is not permitted to go to chow hall early, before the session. Therefore, she claims that she is forced to choose between eating the last meal of the day and the exercise her doctor recommended. *Id*., Pg. ID 18-19. Based on this, she claims an Eighth Amendment violation.

## II.    STANDARD OF REVIEW

Fed.R.Civ.P. 12(b)(6) provides for dismissal of a complaint "for failure of the pleading to state a claim upon which relief can be granted." In assessing a Rule 12(b)(6) motion, the court accepts the plaintiff's factual allegations as true, and asks whether, as a matter of law, the plaintiff is entitled to legal relief. *Rippy v. Hattaway,* 270 F.3d 416, 419 (6th Cir. 2001).

In *Bell Atlantic Corp. v. Twombley*, 550 U.S 544 (2007), the Court, construing the requirements of Fed.R.Civ.P. 8(a)(2), held that although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level...on the assumption that all the allegations in the complaint are true." *Id.*, at 555 (internal citations and quotation marks omitted). Further, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Internal citations and quotation marks omitted). *See also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio* 502 F.3d 545, 548 (6th Cir. 2007). Stated differently, a complaint must "state a claim to relief that is plausible on its face." *Twombley*, at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court explained and expanded on what it termed the "two-pronged approach" of *Twombley*. First, it must be determined whether a complaint contains factual allegations, as opposed to legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*, at 678, citing *Twombley*, 550 U.S. at 555. Second, the facts that are pled must show a "plausible" claim for relief, which the Court described as follows:

> "Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the

mere possibility of misconduct, the complaint has alleged–but it has not 'shown[n]"–'that the pleader is entitled to relief.'" 556 U.S. at 679 (internal citations omitted).

### III. DISCUSSION

#### A. Aramark and Rasheed Ansari [Doc. #21]

The Plaintiff claims that Defendant Aramark, and its Director, Rasheed Ansari, violated the FLSA and the Michigan Correctional Industries Act, M.C.L. § 800.326(4), by paying her less than minimum wages. She premises this claim on the theory that she is an employee of Aramark.

The FLSA, specifically 29 U.S.C. § 206, provides that "[e]very *employer* shall pay to each of his *employees* who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce" a minimum wage. (Emphasis added).

Ms. Peterson is not the first inmate-litigant to claim that Aramark is required to pay prisoners a minimum wage under the FLSA, and this claim has been soundly rejected by every court that has considered the question. In *Adams v. Neubauer*, 2005 WL 1843517 (D. Kan. 2005), the Kansas Department of Corrections contracted with Aramark to provide food services to the inmates. The plaintiff in that case, like Ms. Peterson, worked in the kitchen, receiving between 40 and 60 cents per hour, far below the minimum wage. The Court held that prison inmates are not "employees" under the FLSA. *Id*. at *2, citing *Williams v. Meese*, 926 F.2d 944, 997 (10th Cir. 1991). In

*Franklin v. Aramark Corporation*, 2006 WL 2927503 (W.D. Ky. 2006), the Court cited *Adams v. Neubauer* in holding that "the 'economic reality' of the parties' relationship is simply not one of employee and employer for purposes of the FLSA." *Franklin* at *2. The Court also cited numerous cases from other jurisdictions holding that the FLSA "does not apply to inmates performing work inside the prison while incarcerated." *Id*. *See, e.g., Loving v. Johnson*, 455 F.3d 562, 563 (5th Cir. 2006); *Bennett v. Frank*, 395 F.3d 409 (7th Cir. 2005); *Gambetta v. Prison Rehabilitative Indus. & Diversified Enters.*, 112 F.3d 1119, 1125 (11th Cir. 1997); *Nicastro v. Reno*, 84 F.3d 1446, 1447 (D.C. Cir. 1996); *Danneskjold v. Hausrath*, 82 F.3d 37, 43 (2d Cir. 1996); *McMaster v. Minnesota*, 30 F.3d 976, 980 (8th Cir. 1994).

In *Abdullah v. Myers*, 52 F.3d 324 (6th Cir. 1995)(Table), the Sixth Circuit weighed in, finding that work performed by prison inmates for private entities working under a contract with the state (*Abdullah* involved a private prison operated by Corrections Corporation of America) is not covered by the FLSA:

> "Other circuits which have addressed this issue have concluded that prisoners are not employees entitled to the minimum wage because the prison has a rehabilitative rather than a pecuniary interest in encouraging inmates to work, because the relationship is not an employment relationship but a custodial one, and because the purposes of the Fair Labor Standards Act are not implicated in this situation, as the prisoner does not require the minimum wage to maintain his standard of living, which is provided by the state, and there is no unfair competition with employers outside the prison. See, e.g., *Harker v. State Use Indus.*, 990 F.2d 131, 133 (4th Cir.), cert. denied, 114 S.Ct. 238 (1993); *Vanskike v. Peters*, 974 F.2d 806, 809-10 (7th Cir.1992), cert. denied, 113 S.Ct. 1303 (1993)."

Hence, Plaintiff has not stated a plausible claim under the FLSA. Nor does she have a claim under M.C.L. § 800.326(4), which provides as follows:

> "This act does not prohibit the assignment of prison labor to a private contractor for the production of goods or services to be used solely within a correctional institution, jail, or reentry facility that houses a prisoner population under the jurisdiction of the department of corrections. Inmates assigned by the department of corrections for the production of goods or services that are solely used within a correctional facility or institution that houses a prisoner population under the jurisdiction of the department of corrections are not subject to the prevailing or minimum wage."

Plaintiff argues that because the Huron Valley facility houses not only inmates serving prison sentences, but also boot camp participants who she claims are not under the MDOC's jurisdiction, then the exception to minimum wage laws embodied in the statute does not apply. She states, "Women Huron Valley is not a correctional institution comprised solely of a prisoner population whom is under the jurisdiction of the DOC." *Complaint* [Doc. #1], Pg. ID 14. First, Plaintiff cites no authority for the proposition that boot camp participants are not under the jurisdiction of the MDOC. But regardless, there is nothing in the statute that limits its application to correctional institutions that are comprised "solely of a prisoner population." To the contrary, the plain language of the statute provides that inmates who are assigned to provide *goods or services* that are *solely used within a correctional facility* that houses a prisoner population under the jurisdiction of the MDOC are not subject to the minimum wage. The services that Aramark and Plaintiff provided–food preparation–was rendered or used solely within the Huron Valley facility. She did not provide food services to the outside world. The Huron Valley

-8-

facility is a correctional facility, and it houses a prisoner population under the MDOC's jurisdiction. Plaintiff is a member of that population.

Accordingly, all claims against Defendants Aramark and Ansari should be dismissed.

### B.     Trinity Services Group, Inc. [Doc. #16]

Although Trinity is named in the caption of Plaintiff's complaint, the body of the complaint contains no factual allegations whatsoever regarding Trinity. In fact, Trinity's name does not appear in the body of the complaint.

The plaintiff in a § 1983 case must show that a named defendant was personally involved in the allegations underlying the complaint. *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *Bellamy v. Bradley,* 729 F.2d 416 (6th Cir. 1984). And under *Iqbal*, or course, there must be factual allegations that rise above the speculative level. "Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to pro se complaints." *Cameron v. Howes*, 2010 WL 3885271, at *6 (W.D. Mich., Sept. 28, 2010)(listing cases). "Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004), citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978).

In her response [Doc. #31], Plaintiff argues that since Trinity is the successor to

Aramark as the provider of food services to the MDOC, then this is simply a matter of substituting one corporate entity for another as the real party in interest. In other words, Plaintiff is bringing the same claims against Trinity that she brought against Aramark. Even assuming the validity of this procedural legerdemain, Trinity would be subject to dismissal for the same reasons, discussed above, that I recommended the dismissal of Aramark. Trinity's motion to dismiss should be granted.

### C. The State Defendants [Doc. #23]

Plaintiff has named as Defendants Huron Valley Warden Anthony Stewart and MDOC Director Heidi Washington, and the MDOC Office of Community Corrections ("OCC"). Count I of the Statement of Claims in her complaint is titled "14th Amendment," but in substance asserts a number of claims arising from her allegation of overcrowding at the prison. First, she alleges that the "decision not to alleviate the overcrowding is an act of retaliation against all female prisoners for winning one of the largest cash verdicts by prisoners against the MDOC." *Complaint*, Pg. ID 9. Next, she appears to raise an equal protection claim, asserting that "[t]he OCC has successfully helped reduce the number of male offenders in Michigan's prisons. Yet the OCC has failed to do so for female offenders. The failure to reduce state prison commitments of female offenders is deliberate and has lead (sic led) to severe over-crowding." *Id*., Pg ID 10. Third, she claims that the overcrowding at the Huron Valley Facility is severe enough to constitute a violation of the Eighth Amendment proscription against cruel and unusual

punishment. *Id.*, Pg. ID 10-11. She also claims an Eighth Amendment violation, in what she labels as Count 3, based on a scheduling conflict between her call-out for exercise class and dinner time, which forces her to choose between exercise and eating, both of which are essential for her health. *Id.*, Pg. ID 18-19.

I will begin with the OCC, which is part of the MDOC. Under the Eleventh Amendment, a State or an agency of a State is protected from a suit in federal court for monetary damages by sovereign immunity. *Alden v. Maine*, 527 U.S. 706, 713 (1999). Eleventh Amendment immunity extends to state officials or employees sued in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). The MDOC is a state agency, and is therefore entitled to sovereign immunity from Plaintiff's suit for monetary damages, as are Defendants Stewart and Washington as sued in their official capacities. *See Turnboe v. Stegal,* 324 F.3d 1270, 2000 WL 1679478, at * 2 (6th Cir.2000) ("the MDOC, as an arm of the State of Michigan, is entitled to sovereign immunity").

The individual Defendants–Warden Stewart and Director Washington–are subject to dismissal because Plaintiff makes no plausible factual claims against them. The only factual statement involving Stewart appears at Pg. ID 8 of the complaint, where Plaintiff states, "According to WHV's Warden Mr. Anthony Stewart certain callouts are classified as non-essential." The only factual allegation against Washington is found at Pg. ID 7 of the complaint, and states, "Michigan Department of Corrections Director Heidi

Washington is quoted in various newspaper articles as saying that there is no overcrowding at WHV."

Plaintiff has presented no facts showing that Peterson or Washington were personally involved in any of the allegations underlying the complaint. *See Rizzo v. Goode*; *Bellamy v. Bradley*. As discussed above, *Iqbal* requires that a complaint contain factual allegations that rise above the speculative level. "Where a person is named as a defendant without an allegation of specific conduct, the complaint against him is subject to dismissal, even under the liberal construction afforded to pro se complaints." *Cameron v. Howes*, 2010 WL 3885271, at *6. Moreover, under *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978), § 1983 liability cannot generally be imposed on a theory of respondeat superior. Where there is an allegation of supervisory, or respondeat superior liability, it must be shown that the supervisory officials "actively participated in or authorized" the illegal activity. *Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir.1988); *Bellamy v. Bradley*, 729 F.2d at 421; *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir.1999).

Plaintiff's First Amendment retaliation claim and equal protection claim, presumably against the OCC, are also subject to dismissal, even apart from the issue of Eleventh Amendment immunity. In *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999), the Sixth Circuit held that a retaliation claim has three elements: "(1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that

would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two–that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." Plaintiff has offered nothing more than her speculation that there was a causal connection between her protected activity (the prisoners' lawsuit against the MDOC) and the adverse action (OCC's failure to address overcrowding at Huron Valley).[3] Nor has she plausibly established that the inmate housing levels at Huron Valley are so high as to constitute an adverse action that would deter a person of ordinary firmness from suing the MDOC.

In terms of the equal protection claim, Plaintiff cites various statistics purporting to show OCC's relative success at reducing the number of male prisoners vis-a-vis female prisoners, but offers no facts supporting her conclusion that "[t]he failure to reduce state prison commitments of female offenders is deliberate."

For these reasons, the State Defendants are subject to dismissal.

### IV. CONCLUSION

I recommend as follows:

(1) That Defendants Aramark and Ansari's Motion to Dismiss [Doc. #21] be

---

[3] Other than generally arguing that OCC is protected by Eleventh Amendment immunity, Defendants did not specifically address the retaliation issue. However, this Court can *sua sponte* dismiss a claim that lacks arguable merit. " *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir.1999)( "[A] district court may, at any time, sua sponte, dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion.").

GRANTED.

(2) That Defendant Trinity's Motion to Dismiss [Doc. #15 and #16] be GRANTED.

(3) That Defendants OCC, Peterson, and Washington's Motion to Dismiss [Doc. #23] be GRANTED.

(4) That the complaint be DISMISSED WITH PREJUDICE.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response

shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: July 16, 2018          s/R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

---

## CERTIFICATE OF SERVICE

I hereby certify on July 16, 2018 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to non-registered ECF participants on July 16, 2018.

                                                               s/Carolyn M. Ciesla
                                                                Case Manager for the
                                                                Honorable R. Steven Whalen